James M. Tyree v. Commissioner. Betty I. Tyree v. Commissioner.
Tyree v. Commissioner
Docket Nos. 37570, 37571.
United States Tax Court
1953 Tax Ct. Memo LEXIS 239; 12 T.C.M. (CCH) 582; T.C.M. (RIA) 53186; May 26, 1953
*239 Charles E. Pratt, Esq., and Howell Ward, Esq., for the petitioners. Frank C. Allen, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: These proceedings, consolidated for hearing, involve deficiencies in income tax for 1944, $443.57 in Docket No. 37570 and $463.56 in Docket No. 37571. The issue is whether respondent erred in disallowing as a deduction the alleged cost of certain accounts receivable acquired in connection with the dissolution of a partnership. Findings of Fact The petitioners, husband and wife, filed their income tax returns for 1944 on the community property basis with the collector of internal revenue for the first district of Texas. The husband will be referred to hereinafter for convenience as the petitioner. The petitioner and Boyd D. Henry, doctors of osteopathy, on September 23, 1939, entered into an agreement to practice their profession as partners under the firm name of Henry and Tyree Clinic and to operate a hospital under the name of Corpus Christi Osteopathic Hospital, losses and profits to be shared equally. Thereafter, Merle Griffin became a member of the partnership, with a 13 1/3 per cent *240 interest. The remaining interest was held equally by petitioner and Henry. Article XII of the partnership agreement provided as follows: "If either of the parties hereto shall become dissatisfied with the partnership, he may give written notice to such effect to the other and that he wishes to buy or sell, whereupon, within thirty (30) days, an account and appraisement of the net interest of each partner shall be promptly made by a Certified Public Accountant, which shall be final and binding upon each partner, and if, after the value has been determined, within sixty (60) days, the dissatisfied partner has not received from the other partner twenty per cent (20%) of the value of the dissatisfied partner's interest as so fixed by the accounting, in cash, as part purchase money for the said interest, and has not received a promissory note for the balance of the value, due and payable in ten (10) annual installments of equal amounts, and bearing six per cent (6%) interest per annum, such note to be secured by vendor's lien on the interest conveyed, the dissatisfied partner shall have the right to purchase the interest of the other partner upon the same terms; and in such case the *241 person remaining with the business or practice shall have sole ownership, possession and control of same and all property thereof and shall be responsible for and hold the other harmless as to any of the debts of the partnership theretofore incurred." About May 1944 Henry served notice of a desire to dissolve the partnership. Thereafter petitioner agreed to purchase the interest of Henry and valuations were placed on the assets of the firm. Henry was unable to obtain suitable office space and so advised petitioner. Promptly thereafter petitioner found office space into which he could move. He then, during the last half of June 1944, offered to sell his interest in the business to Henry on the basis of the valuations already made, and the latter accepted. The valuations placed on the assets as of June 30, 1944, the date on which the transaction was to be effective, were as follows: Furniture and Fixtures
$ 3,688.50
Instruments
1,725.76
Equipment
8,750.52
Supplies
7,555.78
Accounts receivable
12,791.72
Cash
2,945.36
Total
$37,457.64
The partnership owned more instruments and equipment than Henry would require in the practice of his profession in an *242 individual capacity. Petitioner needed similar assets to open an offce of his own but made no effort to acquire them in the open market. About May 25, 1944, Henry expressed a willingness to sell to him for the price he paid any articles of the business in excess of his requirements as an individual practitioner, also accounts receivable of patients treated by petitioner as a member of the partnership. Both parties believed that the debtors whom petitioner had treated would become patients of petitioner after the dissolution of the partnership. Thereafter petitioner purchased from him certain office equipment and the accounts receivable. The price fixed and paid for the accounts was $4,754.49. Petitioner desired to purchase other equipment from Henry but he refused to sell. The agreement for the sale of the accounts receivable was made after Henry had made a payment on the purchase of petitioner's interest in the partnership. Petitioner received payment in full from Henry within several weeks after the sale was made. During the last half of 1944 petitioner practiced his profession in an individual capacity. Any collections made on the accounts acquired from the partnership were *243 intermingled with other accounts receivable on his books. In their returns for 1944 petitioners reported long-term capital gain of $12,970.38 from the sale of petitioner's interest in the partnership. The gain was based upon a sales price of $16,231.69 and cost of $3,261.31. They computed the gross income from his individual business during the last half of 1944 by deducting from collections made from patients the amount of $4,754.49 for accounts acquired from Henry. After Henry agreed to purchase the interest of petitioner in the partnership, Griffin had no desire to continue as a partner of the business and thereafter sold his interest to Henry on the terms of the sale by petitioner. He also purchased, on the basis of the valuations fixed for the sale of his partnership interest, equipment not needed by Henry to carry on his profession in an individual capacity, and accounts receivable of patients he had treated as a member of the partnership. The accounts purchased were in excess of 13 1/3 per cent of the outstanding accounts of the firm. In his determination of the deficiencies respondent decreased the amount of capital gain by eliminating the amount of $4,754.49 as the selling *244 price of accounts receivable and treating the amount eliminated as ordinary gain. The ground given for the adjustment was that petitioner had not made a transfer of the accounts. The effect of the adjustments was to increase community income by $2,377.25. Opinion The parties are in agreement that the issue is factual and is controlled by whether petitioner sold his entire interest in the partnership to Henry and then purchased the accounts receivable from the buyer, or received the accounts as a distribution in kind of firm assets and sold the remainder of his interest. The facts established by the evidence are shown in detail in our findings and need not be discussed at length. The substance of the facts is that after Henry was unable to find suitable space to practice his profession as an individual, petitioner agreed to sell out to him, instead of the reverse in accordance with a provision of the articles of co-partnership. After the price had been determined and the buyer had made a payment on the purchase price, the parties agreed upon a purchase and sale of some excess office equipment, which is not in controversy, and outstanding accounts of patients petitioner had treated *245 as a partner, the total amount of which was about $750 less than his share of the agreed value of all of the accounts of the firm. A similar transaction was entered into between Henry and Griffin. These facts are established by uncontroverted evidence of petitioner, Griffin and their and the partnership's outside accountant. We conclude from the evidence that there was a sale by petitioner to Henry of his entire partnership interest and a subsequent purchase of the accounts in question. Accordingly, Decisions will be entered for the petitioners.